This suit which began as a foreclosure on a chattel mortgage note, originally for the sum of $175, but reduced to $74.10, secured by a chattel mortgage on a certain number of cattle fully described in the act of mortgage annexed to the petition, has resolved itself into one for the ownership and possession of nine head of cattle fully described in the plaintiff's petition, only two of which, according to the description, appear to be included among those described in the act of chattel mortgage.
In his petition, the plaintiff, Moses A. Lea, claims to be the owner of the nine head of cattle fully described therein under an alleged agreement said to have been entered into with the defendant, Thomas A. Lea, during the year 1937. He alleges that the therein described cattle are part of a herd, together with the natural increase, which were owned by him and placed on the farm of the defendant during the year 1937 under the agreement referred to, by the terms of which the defendant was to care for the herd, and as his consideration was to receive such revenues as would accrue from the sale of the milk together with all the bull calves which would become the natural increase. He alleges that he became no longer willing to continue the arrangement made between him and the defendant and that he notified him during the month of November, 1938, of his desire to remove the cattle and place them elsewhere.
Plaintiff then alleges that sometime in November, 1939, he went to the defendant's farm and removed therefrom twenty-six head of cattle and that at that time the defendant claimed the ownership of the nine head of cattle which are described in the petition. He avers that his claim of ownership is based on the agreement which he has set out in his petition under which all of the natural increase of the herd, except the bull calves, were to be his cattle, but notwithstanding his ownership thereof, the defendant refused to let him remove the cattle herein described which he claims as his own. He then made the necessary allegation for an order for sequestration and prayed that a writ do issue, and that after trial of the case he be decreed the owner of the nine head of cattle.
The Court granted the necessary order for the writ of sequestration to issue, under which the cattle were seized, and thereupon the defendant obtained an order for a rule to have the writ of sequestration dissolved.
There seems to have been no separate trial of the rule or motion to dissolve the sequestration and the case was tried on the issue as presented in the answer of the defendant to the merits of the case in which he denied all of the plaintiff's claims and pretensions of ownership of the cattle, alleging that they were his as they were all embraced in the agreement between them and under which he became their owner. He avers that he refused to let the plaintiff remove them from his property as they were his cattle and prays for damages in the sum of $100 for loss of time, mental anguish and worry resulting from the issuance of the writ and for $50 attorney's fees incurred by him in filing a motion to have the writ dissolved. Following the filing of defendant's answer we find that plaintiff filed a motion to have the sequestration recalled and dismissed at his costs leaving only the issue of ownership of the cattle involved in the controversy.
There was judgment in favor of defendant in which he was recognized as the owner of the cattle, and plaintiff's demand was rejected and his suit dismissed at his costs. He thereupon took the present appeal.
We find some form of written agreement in the record, purporting to have been signed by the parties on January 1, 1937. It is captioned a "contract between M.A. Lea and T.A. Lea and family." But as we understand the testimony of the parties to this suit that is not exactly the contract on which this suit is based. Besides that the document is not of much assistance in solving the issue that is presented to the Court as it is therein stated that the cattle, which are the object of the agreement, will be accounted for by description of color and marks, "as shown on separate sheets of record of the same," and also it would appear that a record was to be made and kept of all increase and decrease of the herd. No such sheets or records seem to have been offered in evidence, none are found in the record and none seem to be in existence. The testimony of the witnesses is so confusing and conflicting and the note of evidence seems to be so improperly transcribed that it is impossible for this Court to obtain any clear idea as to what the real facts are. The only corroborating proof offered by either *Page 430 
party is the testimony of their sons with the exception of two witnesses who were called to testify regarding matters not directly relating to the agreement which gave rise to the controversy.
The case was not argued orally before this Court, no brief was submitted by either side and the trial judge assigned no written reasons for the judgment rendered. He naturally had the advantage of hearing the witnesses testify and was able to form a conclusion far better than we can on the record presented. Under the law the judgment of the lower court is usually presumed to be correct and in the absence of briefs either in support of the one appealed from in this case or to point out the errors which the appellant must of necessity claim to exist, there seems to be nothing that we can do except to affirm it because of that presumption. Judgment affirmed at the costs of the plaintiff, appellant herein.